IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**JULIE TRNAVSKY,**                                    6:12-CV- 00382 RE

        Plaintiff,                              **OPINION AND ORDER**

      v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social Security,

        Defendant.

**REDDEN**, Judge:

Plaintiff Julie Trnavsky ("Trnavsky") brings this action to obtain judicial review of a final

decision of the Commissioner of the Social Security Administration ("Commissioner") denying

her claim for Supplemental Security Income ("SSI") benefits and disability insurance benefits

("DIB"). For the reasons set forth below, the decision of the Commissioner is reversed  and this

matter is remanded to the Commissioner.

1  - OPINION AND ORDER

## BACKGROUND

Born in 1957, Trnavsky has a degree in structural engineering, and has past relevant work as a civil engineer. Tr. 827, 146, 830. In March 2008, Trnavsky filed applications for SSI and DBI benefits, alleging disability since November 30, 2007, due to depression, Post-Traumatic Stress Disorder ("PTSD"), rheumatoid arthritis, fibromyalgia, Irritable Bowel Syndrome ("IBS"), mononucleosis, and dust and pollen allergies. Tr 142. Her application was denied initially and upon reconsideration. After an August 2010 hearing, and a supplemental April 2011 hearing, an Administrative Law Judge ("ALJ") found her not disabled in an opinion issued in June 2011. Trnavsky's request for review was denied, making the ALJ's decision the final decision of the Commissioner.

## ALJ'S DECISION

The ALJ found Trnavsky had the medically determinable severe impairments of Hashimoto's thyroiditis, growth hormone deficiency (stable), fibromyalgia (stable), palindromic rheumatism (stable), degenerative disc disease of the cervical and lumbar spine, mild obesity, migraines, PTSD, dysthymic disorder, and personality disorder NOS. Tr. 20.

The ALJ determined that Trnavsky retained the residual functional capacity ("RFC") to perform a reduced range of light work. Tr. 23.

The ALJ found that Trnavsky was not able to return to her past relevant work, but relying on the testimony of a vocational expert ("VE") found that there were jobs that Trnavsky could perform. Tr. 32-33.

The medical records accurately set out Trnavsky's medical history as it relates to her claim for benefits. The court has carefully reviewed the extensive medical record, and the parties

are familiar with it.  Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

**DISCUSSION**

Trnavsky contends that the ALJ erred by:  (1)  finding her not fully credible; (2) improperly weighing the testimony of health practitioners; (3) improperly weighing lay evidence; and (4) finding that she retains the ability to perform other work in the economy.

## I. Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir 1998).  Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.*  The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.  *Id.*  The evidence upon which the ALJ relies must be substantial. *Reddick,* 157 F.3d at 724.  *See also Holohan v. Massinari,* 246 F.3d 1195, 1208 (9th Cir 2001).  General findings (e.g., "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick* at 722.  *See also Holohan,* 246 F.3d at 1208.  The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir 2002).

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis:  the *Cotton* analysis and an analysis of the credibility of the

claimant's testimony regarding the severity of her symptoms." [Footnote omitted.] *Smolen v.*

*Chater,* 80 F.3d 1273, 1281 (9th Cir 1996).

> Under the *Cotton* test, a claimant who alleges disability based on subjective
> symptoms "must produce objective medical evidence of an underlying
> impairment which could reasonably be expected to produce the pain or other
> symptoms alleged...." *Bunnell,* 947 F.2d at 344 (quoting 42 U.S.C. § 423
> (d)(5)(A) (1988)); *Cotton,* 799 F.2d at 1407-08. The *Cotton* test imposes
> only two requirements on the claimant: (l) she must produce objective
> medical evidence of an impairment or impairments; and (2) she must
> show that the impairment or combination of impairments *could
> reasonably be expected to* (not that it did in fact) produce some degree
> of symptom.

*Smolen,* 80 F.3d at 1282.

Trnavsky testified that she is unable to work because "I'm not able to function on a

regular basis, on a daily basis. I'm up and down. I'm not able to –my self-care and my daily

function is up and down." Tr. 836. She testified that she does not sleep well, and tha stress

causes migraines, "[s]ometimes ...a couple of times a month," that prevent her from functioning.

Trnavsky gets depressed around holidays, for which she takes Cymbalta. The medication helps

but sometimes makes her dizzy. Tr. 839. She has severe joint and muscle pain in her knees,

ankles, hands and shoulder. Tr. 839-40. On a typical day her pain level is about three out of ten.

Tr. 840. If she does too much, she will put heat and cream on her right shoulder, elbow, hand,

knee, and hip. Tr 841. During the hearing, Trnavsky could not recall the name of her

chiropractor, and when the ALJ asked to change the subject, Trnavsky became very upset and left

the hearing and did not return. Tr. 843-44. The ALJ asked counsel to provide any evidence that

might substantiate the claimant's reports of childhood ritualistic abuse. Tr. 850.

The hearing reconvened in April 2011. Tr. 856-902. The ALJ noted that Trnavsky was

present but she was face down in a pillow, rocking back and forth throughout the hearing. Tr. 858. At this hearing Trnavsky testified that she was fired from several jobs because she had PTSD flashbacks and yelled at others. Tr. 881-82. She thought her husband was poisoning her because she could not find out why she became so sick so quickly. Tr. 889. She quit her last job, moved to Oregon, and got better.

Trnavsky testified that it took seven years for her to obtain her engineering degree, and that she was accommodated for disabilities. Tr. 250. From 1988 to 2000 she received Social Security Disability benefits because of her mental condition. By 2000, she thought that her depression and PTSD symptoms had improved sufficiently to allow her to work. Trnavsky wrote that she attributed her health problems to an undiagnosed physical condition, but "[p]erhaps now I have to concede that I may have been fooling myself and my health problems were related to some physical condition rather than to a mental condition." *Id.*

The ALJ found that Trnavsky's allegations as to the intensity, persistence and limiting effects of her symptoms were not credible to the extent that they are inconsistent with the RFC. Tr. 31.

## A. Objective Evidence Contradicted Trnavsky's Testimony

Trnavsky notes that her condition varied throughout the relevant period, and that her severe physical limitations may have been psychological in origin. The ALJ noted that objective medical findings do not support Trnavsky's alleged limitations. Tr. 31. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor" in determining the severity of a claimant's symptoms and their functional consequences. *Rollins v. Massanari,* 261 F.3d 853,

857 (9th Cir. 2001).

The ALJ noted medical records documenting Trnavsky's significant mobility issues, and work release for three months, and that her doctors had found no underlying physical cause despite extensive testing.  Tr. 24-28.

Plaintiff contends that the ALJ's reliance on certain "normal" findings in the record is inconsistent with his own findings of severe impairments of Hashimoto's thyroiditis, growth hormone deficiency, fibromyalgia, palindromic rheumatism, degenerative disc disease of the cervical and lumbar spine, mild obesity, migraines, PTSD, dysthymic disorder, and personality disorder NOS.  The ALJ properly noted that the objective medical evidence does not fully corroborate Trnavsky's symptom testimony.

## B.  Malingering

Gail Wahl, Ph. D., examined Trnavsky in July 2008.  Tr. 432-34.  She diagnosed "Adjustment Disorder with depressed mood well treated with Cymbalta.  Rule out Malingering.  Rule out 301.9 Personality Disorder NOS with borderline features."  Tr. 434.

Trnavsky argues that Dr. Wahl's comment was based on only a brief mental status examination, there was no validity testing, and that she was uncertain as to her conclusion.

The Commissioner points out that Dr. Wahl is a licensed psychologist who conducted a clinical examination.  Dr. Wahl noted that Trnavsky's "description was confusing and somewhat troubling[,]} and was "very, very dramatic in her description of her emotional problems."  Tr. 432.  When an ALJ weighs a claimant's credibility, the Ninth Circuit does not require an actual diagnosis of malingering.  *Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1161 n.1.  Dr. Wahl's diagnosis of "rule out malingering" constitutes sufficient affirmative evidence of

malingering that the ALJ was allowed to consider it.

## C.  Activities

The Commissioner argues that the ALJ properly found plaintiff's activities inconsistent with her allegations of disability in that she rode an all-terrain vehicle, spent hours working on her wedding dress, drove, and attended one two hour long wool dying class.  The record indicates that the work on the dress resulted in increased swelling in her hands and legs.  Tr. 695.  There is no evidence as to how often she drives or rides on an all-terrain vehicle.  These activities are not inconsistent with Trnavsky's allegations of disability.

## D.  Inconsistent Demeanor

An ALJ may consider a claimant's demeanor when weighing credibility.  *Thomas v. Barnhart,* 278 F.3d 947, 960 (9th Cir. 2002).  However, the ALJ's observations of a claimant's functioning may not form the sole basis for discrediting a person's testimony.  *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007).

Here, the ALJ observed Trnavsky's demeanor and behavior at two hearings, and that she was able to attend and testify at a hearing lasting nearly 90 minutes.  The ALJ did not err by considering the claimant's demeanor.

## E.  Statements Regarding Alcohol

Untruthfulness about alcohol consumption is a clear and convincing reason to reject a claimant's testimony.  *Verduzco v. Apfel,* 188 F.3d 1087, 1090 (9th Cir. 1999).  The ALJ noted that Trnavsky testified in April 2011 that she drank alcohol about once a month because she did not like it.  Tr. 861.  In September 2009 she reported drinking eight drinks a week.  Tr. 699.

Plaintiff's counsel argues that the ALJ unreasonably assumed that her drinking habits did

not change over time. The ALJ's interpretation of the evidence is reasonable and he did not err by finding the claimant's inconsistent statements reduced her credibility.

**F. Lack of Mental Health Treatment**

The effectiveness of medication is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). The fact that a claimant requires only conservative treatment measures can discount the alleged severity of her limitations. *Parra v. Astrue,* 481 F.3d 742, 750-51 (9th Cir. 2007).

Here, the ALJ noted that Trnavsky took only Cymbalta for her mental impairments. The ALJ erroneously found that she took nothing for anxiety, because the Cymbalta addressed anxiety as well as depression. The ALJ concluded that the medical record indicated that the medication effectively managed her symptoms, and noted that the claimant's reason's for failing to seek counseling was less than convincing. Trnavsky testified that she did not return to a psychologist because he did not believe her report of childhood ritual abuse. Tr. 884. She testified that were no qualified practitioners in Coos Bay that accepted her insurance, and she could not afford to travel weekly to Medford or Eugene. *Id.*

There is conflicting evidence as to the effectiveness of Trnavsky's medications and treatment, and the ALJ did not err by finding her medication and treatment regime discount the alleged severity of her limitations.

The ALJ's credibility finding is supported by substantial evidence and clear and convincing reasons.

**II. Medical Source Opinions**

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1);

416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* But, if two medical source opinions conflict, an ALJ need only give "specific and legitimate reasons" for discrediting one opinion in favor of another. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

## A. Tracy Gordy, M.D.

Dr. Gordy, a psychiatrist, reviewed the claimant's medical records. Tr. 863. He diagnosed dysthymia, a history of PTSD, and "some evidence" of a personality disorder. Tr. 865. He opined that none of these impairments met or equaled in severity a listed impairment. Dr. Gordy found that Trnavsky would have mild to moderate limitations in activities of daily living and social functioning. Tr. 866. Dr. Gordy stated that the claimant had mild limitations of persistence and pace.

Dr. Gordy reviewed a letter written by treating physician Megan Holland, M.D. on April 6, 2011. Dr. Holland stated:

> I have worked with Julie since 8/12/2008 as her family physician.
> I have seen her numerous times during that period for medical care.
> The majority of our interactions have been related to her many chronic
> medical conditions as opposed to her psychiatric conditions. She has
> also been seen numerous times by various specialists during that
> period for medical consultation, most frequently seen by her
> endocrinologist.
>
> She self-reports an extensive history of PTSD, depression, and

Dissociative Personality Disorder.  Her long psychiatric history
is well documented by multiple clinical psychologists and mental
health counselors who are much more capable than I in describing
and treating these conditions.  Her reported symptoms meet clinical
criteria for severe PTSD.  I can state that those times in which we
have discussed in more detail her history of abuse or mental health
issues and concerns have been very traumatic visits for Julie.  She
has been very tearful, disorganized, and distraught.  She has exhibited
abnormal, frequent, repetitive movements.  She has manifested
alternate personalities.  Her appearance and behaviors during those
times would certainly support PTSD as well.

She has made many attempts to return to work without success.  I
do believe that between her medical and psychiatric conditions that
she is unable to maintain employment.

Tr. 786.

Asked his opinion about Dr. Holland's letter, Dr. Gordy stated that he had read Dr.

Holland's notes "and there's nothing that substantiates any of the things that she says here."  Dr.

Gordy noted that the claimant and Dr. Holland had discussed "some of these things," but that

there was "nothing in the record prior to this time from Doctor Holland that indicates any support

for this."  Tr. 867.

Dr. Gordy stated that people who develop PTSD as a result of trauma at a young age

"typically" will develop personality disorders.  Tr. 868.  He testified that the claimant retained

the social skills to function in a non-threatening situation.  Tr. 869.  Asked whether someone

with the claimant's conditions would be capable of working and functioning in a work

environment with a supervisor, Dr. Gordy stated:

Well, Your Honor, to be honest about it obviously this is going to
be conjecture again, but I think it would totally depend on the type
of supervisor.  You know, hard-nosed, hard-driving, non-compassionate
kind of person then she probably would have trouble as she's having
today apparently.  And but on the other hand if you had somebody who

was supportive she might do very well.  Clearly this is a talented lady.

Tr. 869.

The ALJ gave "great weight" to Dr. Gordy's opinion "with respect to the claimant's mental residual functional capacity." Tr. 29.  The ALJ did not address Dr. Gordy's opinion regarding the claimant's amenity to supervision.

The Vocational Expert ("VE") testified that there was no way to predict that an employee would have a particular type of supervisor.  Tr. 894-95.  The VE stated that if a hypothetical person felt threatened and became argumentative with a supervisor they would most likely be terminated.  Tr. 897.  Any sign of irritability, aggressiveness, or acting out would usually result in termination.

The plaintiff argues that if Dr. Gordy's opinion regarding Trnavsky's ability to work with a difficult supervisor is fully credited, the testimony of the VE establishes that Trnavsky is not able to perform any work.

The Commissioner contends that Dr. Gordy's opinion regarding Trnavsky's ability to work with a difficult supervisor was pure conjecture.  The Commissioner points to Dr. Gordy's testimony that there was nothing in the record that would indicate Trnavsky had limitations in responding appropriately to supervision, co-workers, and work pressure in a work setting.  Tr. 866.  Dr. Gordy stated "[t]here's not anything in the record at the current time that relates to that so anything I say would just be conjecture.  But, you know, with a history of her activities since she's been in Oregon, of her getting married and so forth, her recent response after her just recent surgery, it appears there is not any issue there."  *Id.*  Finally, the Commissioner notes that Dr. Gordy agreed that the ALJ's residual functional capacity finding, which allowed for occasional

11  - OPINION AND ORDER

interaction with coworkers, accurately translated Dr. Gordy's functional findings.  Tr. 870.

Plaintiff points out that Dr. Gordy testified that Trnavsky's problems were consistent with a personality disorder.  Tr. 868.  He testified that "[t]here's a lot of passive dependency, a lot of fear of any kind of authority figure which is what unfortunately both of us [the ALJ and himself] are at this particular point." *Id.*  Dr. Gordy testified that Trnavsky has social skills "as long as it's not a threatening situation."  Tr. 869.

Dr. Gordy's opinion is arguably inconsistent, but he does assert that his opinion as to supervision issues is conjecture.  "Where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld." *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005)(citations omitted).  Accordingly, the ALJ did not err by failing to include limitations relating to type of supervisors in the claimant's RFC.

### B. Megan Holland, M.D.

Dr. Holland's April 2011 letter opinion is set out above.  The ALJ gave "very little weight" to Dr. Holland's opinion.  Tr. 29.  The ALJ wrote:

> Dr. Holland admitted that she had almost no involvement in the claimant's mental health treatment, but she included possible limitations attributable to those impairments in her assessment. In fact, Dr. Holland did not identify a single limitation related to the claimant's physical functioning.  The diagnoses she assessed during that visit are not all supported by the overall evidence of record and, due to the briefness of her comments, it is unclear how much of Dr. Holland's conclusion should be attributed to those non-medically determinable conditions.  Dr. Holland failed to address how the claimant could be disabled despite the fact that the claimant had been steadily improving throughout 2009 and predominantly stable in 2010 by Dr. Holland's own estimation.

*Id.*

Dr. Holland's records indicate that in August 2008,  Trnavsky reported more emotional episodes, increasing depression, suicidal ideation, low energy, lack of mental focus, poor memory, increasing anxiety and lack of sleep.  Tr. 468.   Dr. Holland diagnosed, in addition to physical diagnoses, PTSD, Major Depressive Disorder, and Dissociative Disorder, noting apathetic depression and overwhelming fatigue not correlating with thyroid levels.  Tr. 470.

Dr. Holland's credibility is bolstered by the fact that in December 2008, she was asked by the Department of Human Services to give her opinion as to Trnavsky's physical limitations.  Tr. 515.  Dr. Holland declined to do so on the basis that she had only seen the patient twice and was therefore unable to comment on her physical and mental functions.  *Id.*

In June 2009, Dr. Holland noted complaints of significant increase in depression and a complex psychiatric history including depression, PTSD, child physical and sexual abuse, and cult worship and abuse.  Tr. 554.  Dr. Holland referred Trnavsky to a psychiatrist.  In July 2009, Dr. Holland noted that Trnavsky's depression was slightly better.  Tr. 552.  Dr. Holland observed the claimant, describing her as tearful, disorganized and distraught, exhibiting abnormal, frequent, repetitive movements, and manifesting alternative personalities.  Tr. 786.

As to the ALJ's assertion that Trnavsky was stable by 2010, the evidence indicates that her depression was stable but her PTSD, anxiety, dissociation, and somatization were worse.  Tr. 765.

The ALJ stated that Dr. Holland's mental diagnoses are not supported by the overall evidence of record.  However, in December 2007, Russell Rothenberg, M.D., a rheumatologist, described the claimant as having a "severe disability, anxiety and depression due to overwhelming neurological disease."  Tr. 368.  Dr. Rothenberg put Trnavsky on a three month

leave from work and referred her to a neurologist.  Tr. 367.

In September 2009, the claimant was seen by Charles P. Reagan, M.D., who described a sad and anxious affect.  Tr. 536.  He stated that he "believe[d] the patient is suffering from major depression, fibromyalgia, dysthymia, and posttraumatic stress disorder."  *Id.*  He diagnosed PTSD, rule out somatization disorder, dysthymia or probable major depression...rule out pain disorder with medical and psychological factors.  Dr. Reagan's notes indicate that he sent copies of them to Dr. Holland.

In October 2009, Dr. Reagan noted that depression was improved on Cymbalta, the plaintiff's thought was linear, and "a bit psychomotor retarded."  Tr. 539.  Affect was tense with tears, modestly sad and anxious.  Dr. Reagan diagnosed PTSD, dysthymic disorder, major depressive affective disorder recurrent episode in full remission, pain disorders related to psychological factors, generalized anxiety disorders and several physical disorders.

The Commissioner correctly notes that the ALJ is not bound by the uncontroverted opinion of the claimant's physician on the ultimate issue of disability, he cannot reject it without presenting clear and convincing reasons for doing so.  *Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir. 1998).

The ALJ failed to articulate specific and legitimate or clear and convincing reasons to reject treating physician Holland's opinion.

### III.  Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  *Harman v. Apfel,* 211 F.3d 172, 1178 (9th Cir. 2000), *cert. denied,* 531 U.S. 1038 (2000).  The issue turns on the utility of further proceedings.

A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r,* 635 F.3d 1135, 1138-39 (9th Cir. 2011)(quoting *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively, and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart,* 340 F.3d 871, 876 (citing *Bunnell v. Sullivan,* 947 F.2d 871(9th Cir. 2003)(en banc)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue,* 623 F.3d 1032, 1035 (9th Cir. 2010).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

15  - OPINION AND ORDER

The ALJ's failure to credit the opinion of the treating physician is erroneous for the reasons set out above. There are no outstanding issues.

## **CONCLUSION**

The ALJ's decision is not supported by substantial evidence. This matter is reversed and remanded for the calculation and award of benefits, and this matter is dismissed.


IT IS SO ORDERED.

Dated this ⎽⎽ day of March, 2013.


JAMES A. REDDEN
United States District Judge